UNITED STATES of America, Plaintiff,

v.

UNDETERMINED QUANTITIES OF VARIOUS ARTICLES OF DEVICE CONSISTING IN WHOLE OR IN PART OF PROPLAST II OR PROPLAST HA; All Raw Materials; and In–Process Components on the Premises of Oral Surgery Marketing, Inc., and Novamed, Inc., 3142 Telge Street, and at OST Storage Center 3131 Old Spanish Trail, all in Houston, Texas, and Representative Quantity of Various Items of Written, Printed, and Graphic Matter Pertaining to Such Articles, Defendants.

Civ. A. No. H–91–610.

United States District Court,
S.D. Texas,
Houston Division.

March 11, 1992.

**500**

Samuel G. Longoria, Asst. U.S. Atty., Mark S. Brown, Asst. Gen. Counsel, Food and Drug Administration, Houston, Tex., for plaintiff.

Tom Alexander, Alexander & McEvily, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HITTNER, District Judge.

Plaintiff United States of America ("the Government") brought this *in rem* forfeiture action pursuant to the Federal Food, Drug and Cosmetic Act ("the Act"), 21 U.S.C. § 301 *et seq.* Specifically, the Government alleges that the products under seizure are adulterated within the meaning of § 351(a) of the Act because they are not manufactured, packaged, processed or held in conformity with Good Manufacturing Practices regulations for medical devices, 21 C.F.R. 820, *et seq.* ("GMP"). The Government also alleges that the products are misbranded within the meaning of § 352(t) of the Act because information concerning the products was not furnished to the Food and Drug Administration ("FDA") in accordance with 21 U.S.C. § 360i and 21 C.F.R. § 803.24, the Medical Device Reporting ("MDR") regulation.

This is also an action seeking a declaratory judgment that the articles of device are neither adulterated within the meaning of 21 U.S.C. § 351(h) nor misbranded within the meaning of 21 U.S.C. § 352(t).

This cause was tried to the Court from January 21, 1992 to January 27, 1992. Having considered the parties proposed findings of fact and conclusions of law, the evidence adduced at trial and the applicable law, this Court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. The defendant devices are made in whole or in part of (a) a substance that is known as Proplast, (b) materials used to make Proplast, and (c) certain other products not containing Proplast. Proplast is a porous implant material that is intended to promote tissue and bone ingrowth for stabilization of an implant. The defendant devices are Proplast products in finished and unfinished form, and the raw materials used in their manufacture.

2. The claimants are Novamed, Inc. ("Novamed") and Oral Surgery Marketing,

Inc. ("OSMI"), (collectively referred to as "Claimants").

3. The Claimants are manufacturers of medical devices.

4. FDA has statutory authority to conduct inspections of device manufacturers pursuant to 21 U.S.C. § 372.

5. In March, 1989, the FDA issued a twelve page Form 483 Inspection Report to Novamed, Inc. and a related company Vitek, Inc. ("Vitek") noting observed deficiencies in the following categories: (1) Production and Process Controls, (2) Final Device Inspection, (3) Equipment, (4) Environmental Control, (5) Complaint Files, and (6) MDR Reporting.

6. In August, 1990, the FDA issued a twelve page Form 483 Inspection Report to Novamed, Inc. noting observed deficiencies in the following categories: (1) Production and Process Controls, (2) Finished Device Inspection, (3) Complaint Files and MDR Reporting, (4) Quality Assurance Program, (5) Equipment, (6) Components, (7) Device History Records, (8) Personnel, and (9) Distribution.

7. In December, 1990, the FDA issued a two page Form 483 Inspection Report to Novamed, Inc. Although the report was not broken into categories, the deficiencies observed and reported concerned complaint reporting and a possible deviation of Proplast II from its original design.

8. In February, 1991, the FDA issued a six page Form 483 Inspection Report to OSMI and Novamed, Inc. noting observed deficiencies in the following categories: (1) Quality Assurance, (2) Complaint Files and MDR Reporting, (3) Finished Device Testing, (4) Production and Process Controls, (5) Equipment, (6) Personnel Training, (7) Distribution, and (8) Components.

9. The four Form 483 Inspection Reports (March, 1989; August, 1990; December, 1990; and February, 1991) contained many observed deficiencies which were repeated.

10. In each of the four inspections which are the subject of this lawsuit, the inspection report accurately reflects the observations of the inspector.

11. Claimants responded to three of the four Form 483 Inspection Reports with a letter of explanation to the FDA.

12. 21 U.S.C. § 360j(f)(2) permits any person who is subject to the GMP regulations to petition for "an exemption or variance" from any requirement of the regulations.

13. The Claimants did not file a petition for exemption pursuant to 21 U.S.C. § 360j(f)(2).

14. Proplast base patty lots R031 and R441, a component of various Proplast products made by Novamed and Vitek, failed required tensile testing specifications.

15. Proplast base patty lots are critical components of finished Proplast devices.

16. Although the base patty lots R031 and R441 were designated for use in "preformed and block implants" only, Novamed accepted the lots for other uses.

17. Isopar solvent, a manufacturing material, is used in the production of Proplast products. Claimants' procedures require testing of the Isopar solvent before using it to mix the raw materials. Instead of comparing the test results to a known, constant standard, Claimants compare the test results to previous test results.

18. The Claimants did not establish specifications for the force required in manually conducting the "peel" test as part of the finished device inspection.

19. The Claimants did not calibrate the 160Z oven, the Dillon Tensile Tester and the quality assurance resistivity meter in accordance with the ranges specified in the Claimants' procedures.

20. Process validation is documentation of a manufacturer's control measures which are intended to assure that the produced device conforms to original design. The Claimants did not maintain and, therefore, did not provide to FDA inspectors, process validation on numerous critical manufacturing processes such as sintering and back leaching.

21. Some complaints about Claimant's products have not been adequately documented and investigated.

22. Claimants received several reports indicating that Proplast devices may have caused or contributed to serious injury in patients.

23. Uncontroverted evidence was presented by physician consumers of the devices in question that the products manufactured by Novamed and OSMI were above average products which failed at a lower rate that other similar products.

24. Any conclusion of law which should be construed as a finding of fact is hereby adopted as such.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action under 28 U.S.C. § 1345, 21 U.S.C. § 334, 28 U.S.C. § 2201, and 28 U.S.C. § 2412.

2. The articles under seizure in this action are devices within the meaning of 21 U.S.C. § 321(h).

3. The finished devices under seizure in this action are required to be manufactured, packed, and stored in conformity with the GMP regulations for medical devices as set forth at 21 C.F.R. § 820, *et seq.*

■ 4. In order to prove a claim of adulteration of a device based upon noncompliance with GMP regulations, the Government need not establish that the device is *actually deficient* as a result of the GMP violation. *See United States v. Bel-Mar Laboratories,* 284 F.Supp. 875, 881 (E.D.N.Y.1968).

■ 5. Additionally, whether a manufacturer is, in the Court's estimation, in *substantial* compliance with GMP regulations is immaterial if the FDA, in its discretion, determines that *full* compliance with the regulations is necessary. *See United States v. Western Serum Co.,* 498 F.Supp. 863, 867 (D.Ariz.1980), *aff'd.,* 666 F.2d 335 (9th Cir.1982).

■ 6. 21 C.F.R. § 820.20(a)(2) requires that a manufacturer have a quality assurance program which assures the approval or rejection of all components, manufacturing materials, and in-process materials. Claimants failed to have an adequate quality assurance program as required by 21 C.F.R. § 820.20(a)(2).

7. 21 C.F.R. § 820.198(b) requires that a manufacturer review, evaluate and investigate "any complaint involving the possible failure of a device to meet any of its performance specifications." Claimants failed to adequately perform such review, evaluation, and/or investigation as required by 21 C.F.R. § 820.198(b).

8. 21 C.F.R. § 820.161 requires that a manufacturer investigate critical components which do not meet performance specifications. Claimants failed to adequately conduct such investigations as required by 21 C.F.R. § 820.161.

9. 21 C.F.R. § 820.100(a)(1) requires that a manufacturer establish procedures for specification control measures to assure that the design basis for the device, components, and packaging is correctly translated into approved specifications. Process validation is a requirement of this section. Claimants failed to establish adequate procedures and failed to provide process validation as required by 21 C.F.R. § 820.-100(a)(1).

10. 21 C.F.R. § 820.100(b)(2) requires that a manufacturer conduct processing control operations in a manner designed to assure that the device conforms to applicable specifications. Claimants failed to conduct all processing control in the manner required by 21 C.F.R. § 820.100(b)(2).

11. 21 C.F.R. § 820.60(d) requires that a manufacturer limit a manufacturing material to a specified amount so that it does not adversely affect the device's fitness for use. It further requires that a manufacturer document the removal of a manufacturing material from a device. Claimants failed to adequately place such limits on manufacturing materials and failed to adequately document the removal of manufacturing material as required by 21 C.F.R. § 820.60(d).

12. 21 C.F.R. § 820.160 requires that a manufacturer establish written procedures

for finished device inspection which are adequate to assure that the device specifications are met. Claimants have failed to adequately establish such procedures as required by 21 C.F.R. § 820.160.

13. 21 C.F.R. § 820.61 requires manufacturers to ensure that all production and quality assurance measurement equipment is suitable for its intended purposes and is capable of producing valid results. Claimants failed to provide FDA inspectors assurance that its production and quality assurance measurement equipment could satisfy the requirements of 21 C.F.R. § 820.-61.

14. 21 C.F.R. § 820.61 also requires that manufacturers routinely calibrate, inspect, and check all production and quality assurance equipment according to written procedures. The section further requires the manufacturer to document the procedure. Claimants failed to routinely calibrate equipment, take remedial action when accuracy and precision limits were not met, and maintain records documenting these activities as required by 21 C.F.R. § 820.61.

15. 21 C.F.R. § 820.20(a)(4) requires that manufacturers establish a quality assurance program which consists of procedures which will assure that, *inter alia*, all quality assurance checks are appropriate and adequate for their purpose and are performed correctly. Claimants failed to adequately assure that all quality assurance checks are appropriate and adequate for their purpose as required by 21 C.F.R. § 820.20(a)(4).

16. 21 C.F.R. § 803.24(b) requires a manufacturer to report to FDA any information that reasonably suggests that one of its marketed devices may have (1) caused or contributed to a death or serious injury or (2) malfunctioned and a recurrence of the malfunction would likely cause or contribute to a death or serious injury. Claimants failed to furnish information in accordance with 21 C.F.R. § 803.24(b).

17. The *de minimis* doctrine is an equitable doctrine which mitigates against the sometimes harsh results of strict application of FDA regulations. *See United States v. General Foods Corporation,* 446 F.Supp. 740, 746 (N.D.N.Y.1978); *see also United States v. 449 Cases, Containing Tomato Paste,* 212 F.2d 567, 575 (2d Cir. 1954). The Court determines that the *de minimis* doctrine does not apply in this context (1) because the subject matter of the seizure is medical implant devices rather than food, (2) because GMP standards for the devices are flexible and tolerant of manufacturers' methods, and (3) because Claimants received notice of their violation through multiple inspection reports.

18. In the alternative, even if the *de minimis* doctrine is implicated by the instant prosecution, the Court determines that the violations previously outlined are not *de minimis* violations, individually or taken together.

19. The seized articles are adulterated within the meaning of 21 U.S.C. § 351(h).

20. The seized articles are misbranded within the meaning of 21 U.S.C. § 352(t).

21. As the Court has determined that the seized articles are both adulterated and misbranded pursuant to the Act, judgment is entered in favor of the Government with regard to the action for declaratory judgment that the articles of device are neither adulterated within the meaning of 21 U.S.C. § 351(h) nor misbranded within the meaning of 21 U.S.C. § 352(t).

22. Because the seized articles are adulterated and misbranded, they shall be condemned and forfeited pursuant to the Act.

23. In accordance with 21 U.S.C. § 334(e), court costs, fees, and storage expenses are taxable against the Claimants.

24. Any finding of fact which should be construed as a conclusion of law is hereby adopted as such.